COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


WARREN ANTHONY WINSTEAD

MEMORANDUM OPINION* BY
v.        Record No. 0794-23-1            JUDGE ROSEMARIE ANNUNZIATA
APRIL 23, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

(Michael T. Soberick, Jr.; Dusewicz & Soberick, on brief), for
appellant.  Appellant submitting on brief.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General; Lucille M. Wall, Assistant Attorney General, on
brief), for appellee.


Warren Anthony Winstead appeals his convictions, in a jury trial, for assault and battery,

strangulation, and wounding in the commission of a felony under Code §§ 18.2-51.6, -53, and -57.

He argues that the evidence was insufficient to support the convictions.  Finding no error, we affirm

the judgment of the trial court.

BACKGROUND

On appeal, we view "the evidence in the light most favorable to the Commonwealth, the

prevailing party in the circuit court, and we accord the Commonwealth the benefit of all

reasonable inferences deducible from the evidence." *Britt v. Commonwealth*, 276 Va. 569, 573

(2008).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

John Coleman was a friend of Winstead's mother, Shirley Smith, and often helped her with home and yard maintenance. Coleman had left his utility trailer on her property, which he had previously used for the maintenance and yard work.

On May 21, 2022, Winstead told Coleman on a phone call that he had made repairs to the trailer and was using it on his own job site to store trash and debris; when Coleman asked for the trailer to be returned to him, Winstead said that he would return the trailer the following Monday. A week later, on May 28, 2022, Winstead called Coleman and argued about the repairs he had made to the trailer; Coleman complained that Winstead had not asked for permission to take, use, or repair the trailer. Coleman called Smith afterward and said that he planned to pick up the trailer from her home.

Warren Winstead was at the home when Coleman arrived and let Coleman into the house. Smith was not at the home when Coleman entered. Coleman and Winstead argued over the trailer. As Coleman left the home and stood on the porch, he heard Winstead make a comment. When Coleman asked Winstead what he had said, Winstead got "in" Coleman's face, and Coleman ordered him to step back. Winstead cursed Coleman, who turned to leave. Winstead punched Coleman in the chest with both hands, and Coleman fell. As he tried to stand, Winstead punched him in the left eye. When Coleman fell back a second time, Winstead "jumped" on Coleman, straddling him on the floor. Winstead "pound[ed]" Coleman on the top of his head about four times. While continuing to punch the left side of Coleman's face, Winstead used his left hand to grab Coleman's throat and hold him down against the porch. Winstead struck Coleman's face more than 20 times. Coleman was unable to move and could not break Winstead's grip on his throat. Coleman was unable to breathe due to Winstead's choking, and he felt close to passing out when his vision started going dark.

Coleman begged Winstead to stop the assault, but Winstead repeated for him to "shut up." Coleman managed to inch away from Winstead, who eventually stopped the attack. He did not stop to collect his trailer, but took a picture of it as he headed to his car. Winstead yelled for him to "get the hell out" of the property, jumped off the porch, and ran toward Coleman as he drove away.

After Coleman left the property, he called law enforcement; the responding officer took pictures of his injuries which showed significant bruising to the left side of his face, left eye, and his neck. A hospital examination disclosed a hematoma in the left orbital rim and on the right side of his neck, along with abrasions, bruising, and swelling. Coleman continued to feel pain for several days from these injuries.

Winstead testified at trial and claimed that Winstead and Coleman engaged in a fistfight as Winstead tried to make Coleman leave. Winston asserted that as he escorted Coleman from the house after their argument, he "bumped against" Coleman's back, and Coleman responded by punching Winstead in the face. Winstead further asserted that he pushed Coleman out the door, grabbed him "by his collar, by his neck" and struck Coleman, telling him to leave the property. Winstead claimed that Coleman fell after Winstead struck him.

Winstead introduced two photographs taken three days after he was charged, showing a cut under his left eye and marks on the right side of his neck. Winstead sought no medical treatment or police intervention after the encounter. During cross-examination, the Commonwealth impeached Winstead with his nine prior felony convictions.

Winstead was indicted for aggravated malicious wounding, strangulation, and wounding in the commission of a felony under Code §§ 18.2-51.2, -51.6, and -53.[1] After the Commonwealth presented its evidence, the trial court struck the aggravated enhancement of malicious wounding,

---

[1] Winstead was also charged with abduction under Code § 18.2-47, but was never arraigned; the offense was nolle prossed by the Commonwealth before the jury trial started.

finding insufficient evidence of permanent injury. After all evidence was presented, the jury found Winstead guilty of misdemeanor assault and battery as a lesser-included offense of malicious wounding, wounding in the commission of a felony, and strangulation. The trial court sentenced Winstead to 5 years and 12 months of incarceration. This appeal followed.

ANALYSIS

Winstead argues that the evidence was insufficient to convict him of all offenses. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Any "[p]otential inconsistencies in testimony are resolved by the fact finder." *Id.* at 292. Such conflicts are not revisited on appeal "unless 'the evidence is such that reasonable [persons], after weighing the

evidence and drawing all just inferences therefrom, could reach but one conclusion.'" *Id.* (alteration in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). The fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc) (citing *Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991)). In addition, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Moreover, the jury was permitted to consider Winstead's prior felony convictions in assessing his credibility. *See* Code § 19.2-269.

A person commits an assault when he "attempt[s] or offer[s], with force and violence, to do some bodily hurt to another." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). The offense becomes battery upon the "wil[l]ful or unlawful touching" of the victim. *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). The offense of strangulation occurs when a person, without consent, "impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person" and causes a "wounding or bodily injury." Code § 18.2-51.6. When a person "unlawfully shoot[s], stab[s], cut[s], or wound[s] another" in attempting or committing a felony, then he is guilty of wounding in committing a felony under Code § 18.2-53.

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient for the jury to find Winstead guilty of all charges. Coleman's testimony, supported by the photographs and medical documentation, established that Winstead attacked and knocked him to the ground. That evidence is sufficient to sustain an assault and battery conviction. Once he was

on the ground, Winstead choked Coleman, intentionally restricting Coleman's respiration, and caused bodily injury in the form of bruising and contusions on the neck. This evidence is sufficient to sustain a conviction for strangulation. In effectuating that strangulation, Winstead continually punched Coleman more than 20 times, causing bodily injury to Coleman's face and left eye. These wounds, inflicted while committing the strangulation, were sufficient to sustain Winstead's conviction for wounding in commission of a felony.

Winstead argues that this evidence was overcome by his testimony and photographs. But the jury was entitled to weigh the credibility of all the evidence and disregard Winstead's testimony. Coleman sought law enforcement and medical assistance after the encounter; Winstead did not. Coleman's photographs show significantly greater injuries than Winstead's and were taken by other witnesses able to confirm Coleman's condition. Winstead was impeached with a significant criminal history; Coleman was not. We therefore do not revisit on appeal the jury's credibility conclusion that the encounter occurred in the way Coleman testified rather than Winstead's version. *See Towler*, 59 Va. App. at 292.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed*.